IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILLIE F. JOHNSON

    Defendant.                                  Case No.08-cr-30036-DRH

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. INTRODUCTION

Before the Court is defendant Willie Johnson's Motion to Suppress (Doc. 11), for which a hearing was conducted on November 24, 2008. The Court took Defendant's Motion under advisement, its ruling to issue within thirty days from the date of the hearing, in accordance with **18 U.S.C. § 3161(h)(1)(J)**. The Motion to Suppress raised the issue of whether Defendant, who was a social non-overnight guest, had standing to claim Fourth Amendment protection from a warrantless search of his host's home. Having taken into consideration the arguments made by both sides, the Court finds that Defendant does not have standing and thus, his Motion to Suppress (Doc. 11) must be denied.

## II. BACKGROUND

Defendant was indicted for being a felon in possession of a firearm (and an additional count of forfeiture of firearm) on February 22, 2008 (Doc. 1). The Indictment reads that on or about January 22, 2008, Defendant, a felon, was found in possession of a semi-automatic pistol. Defendant was previously convicted of the felony of Second Degree Murder on March 7, 1997. Defendant moved to suppress the firearm recovered by law enforcement officers, arguing that it was seized without a warrant or exception to a warrant, in violation of his Fourth Amendment rights and that it was also the "fruit" of his involuntary statement.

The basic version of the facts is as follows:[1] law enforcement officers received a call from Willie Kyles, the next-door neighbor of Norvis Smith. Kyles told officers that Defendant had been walking through a field and shot Kyles' dog in the leg when the dog started barking. When officers arrived on scene, Kyles stated that after shooting the dog, Defendant proceeded to Norvis Smith's home, located at 338½ Phieffer Road, and that Defendant was heard laughing and bragging to friends about shooting a dog. The officers knocked on the door of 338½ Phieffer Road – at that time, Defendant had been inside Smith's home for approximately 15 minutes, visiting with Smith and four other people.[2] Although the door was opened, there is

---

[1] Both sides have filed their version of the facts of this. Additionally, during the suppression hearing, the witnesses' versions of the facts differed considerably. The Court borrows the version most favorable to the movant.

[2] During the suppression hearing, Smith stated that he and his guests had been drinking that evening but by the time Defendant showed up, there was no more alcohol left. However, Smith also testified that Defendant had been drinking before showing up at Smith's home.

no evidence that Smith gave officers permission to enter. During the suppression hearing, witness testimony was introduced stating that the officers had asked Defendant to first step outside of the home, onto the front porch, and questioned him as to the whereabouts of the gun. The officers then entered the residence with pistols drawn and ordered everyone to get down on the floor. The officers began searching for the gun. Finally, Defendant told them to look under the couch, where the gun was located.

After locating the gun, the officers arrested Defendant and took him to Centerville Police station. The next day he was read his Miranda warnings and then interviewed. After waiving his Miranda rights, Defendant admitted to possessing the gun and also shooting Kyles' dog.

### III. **DISCUSSION**

The central issue of Defendant's suppression motion, further advocated during the hearing, is whether Defendant, as a social guest who was not staying overnight at his host's residence, had a legitimate expectation of privacy protected by the Fourth Amendment, which was thereby violated by the officers' warrantless search of his host's home. If the Court answers in the affirmative, then Defendant has proper standing in which to bring his Motion to Suppress. However, if the Court answers in the negative, then Defendant has no standing on which to claim a Fourth Amendment violation, the search will be considered valid and the Motion to Suppress must be denied.

A.   **Fourth Amendment Case Law**

Currently, there are no opinions issued by either the United States Supreme Court or the Seventh Circuit Court of Appeals (or even a district court within the Seventh Circuit) specifically holding that a non-overnight social guest has a legitimate expectation of privacy in his host's home protected by the Fourth Amendment.  In the case ***Minnesota v. Olson*, 495 U.S. 91 (1990)**, the Supreme Court gave such rights to overnight guests.  A later Supreme Court opinion, ***Minnesota v. Carter*, 525 U.S. 83 (1998)**, followed the holding in ***Olson***, but did not reach the issue of whether social guests who were *not* staying overnight had any Fourth Amendment rights, as they found that a guest who was only at another's residence for a purely commercial purpose (to package cocaine) had no legitimate expectation of privacy in the host's home.  It is the ***Carter*** opinion on which Defendant hangs his hat, believing it aids in the probability that the current Supreme Court may not find it a requirement for a social guest to be staying overnight in order to have Fourth Amendment protection in his host's home.  The finding Defendant proposes was adopted by the Tenth Circuit in ***United States v. Rhiger*, 315 F.3d 1283, 1285-86 (10th Cir. 2003) (analyzing *Carter* and finding that a non-overnight social guest had valid Fourth Amendment expectation of privacy, but finding exigent circumstances existed to give exception to warrantless search**).  The Government seeks to distinguish ***Rhiger*** – first, by pointing out that it is not precedential – and second, that the defendant in ***Rhiger*** maintained a regular

presence in the residence, had stayed overnight in the past, left his car outside the house for several days, had receipts belonging to him in the home, and he had the ability to enter the house when the homeowner was not present.

The Seventh Circuit case discussed in this context is **Terry v. Martin, 120 F.3d 661 (7th Cir. 1997)**, in which the appellate court considered a § 2254 habeas petition. Therefore, the Seventh Circuit only reviewed the Illinois state court's ruling to determine whether Terry had a full and fair opportunity to litigate his claims in state court. One of his contentions was that he should have received Fourth Amendment protection against a warrantless search while a guest at his host's residence. The Seventh Circuit cited to **Olson**, holding that overnight guests have a legitimate expectation of privacy in their host's homes and found that "no language in the Court's opinion expressly states that its holding should not be limited to overnight guests . . . [as] several portions of the Court's reasoning rely on the peculiar nature of an overnight stay in concluding that an overnight guest is entitled to Fourth Amendment protection." **Terry, 120 F.3d at 663**. The Seventh Circuit found the Illinois courts applied the appropriate constitutional standard, even though Terry argued the courts had applied an incorrect standard under **Olson** (Terry asserted **Olson** stood for the proposition that social guests have a per se reasonable expectation of privacy in their host's home). The Seventh Circuit believed the Illinois courts had properly analyzed the facts of Terry's case, finding he had no key to the residence, no belongings inside and no intent to remain at the residence

longer than necessary to complete the drug transaction and therefore, was considered a "temporary visitor" with no connection to the residence other than his criminal activities and thus, no legitimate expectation of privacy existed.

Naturally, Defendant seeks to distinguish *Terry* in that it was a habeas case – limited to examining whether the Illinois courts applied the correct constitutional standard – and the Seventh Circuit never fully addressed the issue of whether Terry had an expectation of privacy in his host's residence. Defendant further opines that *Terry* based its holding on the fact that the sole purpose of the visit was to engage in a drug transaction and that was his only connection to the host's residence. In other words, Terry was not a social guest with prior ties to his host's residence. On the other hand, the Government advocates that regardless of the habeas context, *Terry* is an express rejection of Defendant's argument to broaden the *Olson* holding to include temporary day visitors within the realm of persons who have a legitimate expectation of privacy in their host's home. Here, the Court believes that the proper way to decide the issue is to examine the two Supreme Court holdings in *Olson* and *Carter*, as nothing of precedent has since been issued that would definitively provide an answer.

*Olson* decided the issue of whether a warrantless, nonconsensual entry to arrest Olson in his host's home, where he was an overnight guest, violated his Fourth Amendment expectation of privacy. In *Olson*, police received a tip that an armed robbery suspect had been overheard talking to two women, telling them he

had been the driver of the getaway car. The caller identified these two women and gave their address. When police paid the women a visit, one of them confirmed that a man by the name of Rob Olson had been staying in the upstairs duplex unit with her daughter, but was not there at the moment. She said she would notify police when he returned. A few hours later, police were notified that Olson had returned, so they surrounded the residence and called the woman Olson was staying with, telling her that he should come out of the house. The detective on the phone heard a voice in the background say, "Tell them I left." The woman told police that Olson had just left. At that point, the detective ordered the police to enter the house. They entered without permission, with their weapons drawn, to find Olson hiding in a closet. They arrested him and less that an hour later, he made inculpatory statements at police headquarters.

On appeal, Olson argued that, as an overnight guest, he had a legitimate expectation of privacy in his host's home, protected by the Fourth Amendment. Thus, he reasoned that he had standing to challenge his warrantless arrest, arguing that there were no exigent circumstances to justify it. In constructing its analytic framework, the Supreme Court recognized the basic right that one should not be arrested in his own house without an arrest warrant, even if probable cause exists. **Olson, 495 U.S. at 95 (citing Payton v. New York, 445 U.S. 573 (1980) (to protect entry into one's home absent a judge's prior finding of probable cause to support the arrest warrant))**. This basic right was noted to exist under the

Fourth Amendment if the person "has a legitimate expectation of privacy in the invaded place." *Id.* **(citing *Rakas v. United States*, 289 U.S. 347 (1978))**. A person's expectation of privacy is considered "legitimate" if it is one society would consider "reasonable." *Id.* **at 95-6**.

The Court found the Government's suggested analysis of whether the invaded dwelling issue was to be considered a "home" (requiring an analysis of 12 factors) "needlessly complex." *Id.* **at 96-7 (noting that because "the Fourth Amendment protects people, not places," a person can have a legitimate expectation of privacy in a place other than his own home)**. Instead, the Court found that because Olson was an "overnight guest" at the invaded dwelling, this was enough to show that he had a legitimate expectation of privacy "that society was prepared to recognize as reasonable." *Id.* **at 97**. In effect, the Court observed that staying overnight as a guest in another's home "is a longstanding social custom that serves functions recognized as valuable by society." *Id.* **at 98**. An overnight guest, in turn, would naturally "seek shelter in another's home precisely because it provides him with privacy . . . not [to] be disturbed by anyone but his host and those his host allows inside." *Id.* **at 99**. Further, the Court reasoned that society would consider an expectation of privacy reasonable, due to one's vulnerability when asleep – which is why we seek out our own home or another private place for shelter (such as a host's home or hotel), rather than a public place, where we cannot monitor our own safety or secure our belongings. *Id.* Additionally, the Court found that the overnight

guest generally has some measure of control over the premises (i.e., the host will not usually confine a guest to one particular area of the house), and that the host will usually not admit someone into his home who wants to see or meet with the guest over the guest's objection. *Id.* In other words, the Court believed that hosts will more likely than not respect the privacy interests of their overnight guests. ***Id.* at 100**. For these reasons, the Court held that Olson had a Fourth Amendment right to privacy as an overnight guest in his host's home.

Subsequently, in *Carter*, the Supreme Court decided the issue of whether guests, present only at their host's home solely for a commercial purpose (like packaging cocaine), can claim Fourth Amendment protection when police conduct a warrantless, nonconsensual search of the hosts's home. As in *Olson*, police acted on the tip of an informer that people could be seen bagging white powder from the window of a ground-floor apartment. The officer went to the apartment building to investigate. The officer was able to view inside the apartment through a gap in a closed blinds. For several minutes, he observed the bagging operation. He notified headquarters, which prepared affidavits for a search warrant. Two men were seen leaving the apartment building in a Cadillac, which was stopped by police. Inside the vehicle, the police found a black, zippered pouch and a loaded gun. The two men (defendants Carter and Johns) were arrested; a subsequent search of the vehicle revealed pagers, a scale and 47 grams of cocaine in plastic baggies.

After searching the car, police returned to the apartment, arrested the

host and searched the apartment, pursuant to a warrant. Cocaine residue was found on the kitchen table, as well as plastic baggies similar to those found in the vehicle. The Officer later identified the host, Carter and Johns as the three people he had previously observed in the apartment, stuffing white powder into the baggies. Police later learned that Carter and Johns had come to the apartment for the sole purpose of packaging the cocaine. They had never before been to the apartment and were only there for approximately 2.5 hours. They gave their host cocaine in return for the use of the apartment.

Carter and Johns were charged with conspiracy to commit a controlled substance crime. They moved to suppress all evidence obtained from the apartment and vehicle, as well as to suppress several of their post-arrest statements, arguing that the Officer's initial observation of their drug packaging in the apartment was an unreasonable search in violation of their Fourth Amendment rights. Thus, all evidence later obtained therefrom was inadmissible as fruit of the poisonous tree.

Ultimately, the Supreme Court addressed the issue on certiorari, recognizing that the issue was to be a Fourth Amendment, rather than a "standing," analysis. **Carter, 525 U.S. at 88**. Thus, the Court reiterated that to claim Fourth Amendment protection, a defendant must show he had a legitimate expectation of privacy in the place searched and that this expectation was reasonable, either through concepts of real or personal property law or one recognized by society. *Id*. Again, because the Fourth Amendment is a personal right to be invoked by the

individual to protect the individual and not a place, its application depends, at times, upon the location of the individual. ***Id.***

The Court noted their previous holding in ***Olson***, where an overnight guest in a house was found to have the sort of expectation of privacy protected by the Fourth Amendment. ***Id.* at 89**. Further, the Court recognized that its holding in ***Jones v. United States*, 362 U.S. 257, 259 (1960)**, that "anyone legitimately on the premises where a search occurs may challenge its legality," was subsequently repudiated by the Court in ***Rakas v. Illinois*, 439 U.S. 128 (1978)**. ***Id.* at 89-90**. Thus, the Court distinguished its prior holding in ***Jones*** to clarify that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." ***Id.* at 90**.

Examining the facts in ***Carter***, the Court noted that Carter and Johns were not overnight guests of the apartment lessee, but were merely present in the invaded place for a "business transaction," and were only in the apartment for a couple of hours. ***Id.*** The Court found nothing to suggest that the two were in the apartment for any other purpose but to package the cocaine. ***Id.*** Additionally, the Court found no evidence that the two had any type of preexisting social relationship with their host similar to that of overnight guests, which would "suggest a degree of acceptance into the household." ***Id.*** The Court thereby viewed the apartment as "property used for commercial purposes," rather than as "residential property;" the former warranting a lesser expectation of privacy than the latter. ***Id.* at 90-91 (also**

**finding that Carter and Johns could not claim that the apartment was their "workplace," or their "own private office," which may then have held a higher degree of privacy) (citing *O'Conner v. Ortega*, 480 U.S. 709(1987))**.

The *Carter* Court never explicitly held whether a non-overnight social guest may claim a Fourth Amendment expectation of privacy in his host's home. Instead, it noted that the facts put *Carter* somewhere between the overnight guest who is entitled to Fourth Amendment protection and one who is merely legitimately on the premises with no Fourth Amendment protection. *Id.* **at 91**. Thus, because the nature of the relationship was purely commercial, as was the purpose of their presence in the apartment, the Court concluded that Carter and Johns were more akin to guests simply permitted on the premises and as such, they were not entitled to Fourth Amendment protection regarding the apartment. Following, because there was no constitutional violation, the Court did not reach the issue of whether the police officer's observation through the apartment blinds of the actions of Carter and Johns packaging the cocaine constituted a warrantless "search." *Id.*

B.   Analysis

In this case, Defendant was at Smith's home as a social guest. However, he was not an overnight guest, although he did maintain a friendship with his host that went back several years. He was only at his host's home for approximately 15 minutes before the police showed up to question him. The facts do not show that Defendant was at his host's home for a commercial purpose; it appears he was there

for a social purpose. Defendant argues that because he was not staying overnight at his host's home, the facts in this case do not align with the ***Olson*** or ***Carter*** case. Yet, Defendant asserts that certain aspects of the ***Carter*** opinion, especially the dissent, supports the notion that a social guest, regardless of whether he is staying overnight at his host's home, is entitled to a legitimate expectation of privacy to be free of warrantless searches of his host's home, protected by the Fourth Amendment.

The dissenting opinion in ***Carter*** was written by Justice Ginsburg and joined by Justices Stevens and Souter, who believed that "when a homeowner or lessee personally invites a guest into her home to share in a common endeavor, whether it be for conversation, to engage in leisure activities, or for business purposes licit or illicit, that guest should share his host's shelter against unreasonable searches and seizures." ***Id.* at 106**. Recognizing the home as the place of utmost privacy, the dissent based its opinion on a scenario where a homeowner chooses to share the privacy of her home with a guest. Additionally, the dissent found that a homeowner's reasonable expectation of privacy due to power to exclude others should also recognize the homeowner's power to *include* others and as such, Court decisions regarding Fourth Amendment protection should reflect both the power to exclude and include others into one's home. ***Id.* at 107**. The dissent was also concerned that the ***Carter*** holding would will encourage law enforcement to conduct warrantless searches and seizures into homes to find evidence incriminating non-overnight guests. ***Id.* at 108 ("[P]eople are not genuinely 'secure in their . .**

**. houses . . . against unreasonable searches and seizures' . . . if their invitations to others increase the risk of unwarranted governmental peering and prying into their dwelling places."**). Thus, the dissent would have found that the host's invitation into his or her home should give the guest a reasonable expectation of privacy in the host's home, thereby extending *Olson's* rationale and holding to shorter term guests as well as overnight guests.

To illustrate, the dissent believed that merely visiting the home of a "friend, relative, or business associate, whatever the time of day, 'serves functions recognized as valuable by society.'" *Id.* at 109. The overnight requirement, the dissent explained, is superfluous and the proper analysis should be whether (1) "both host and guest 'have exhibited an actual (subjective) expectation of privacy;' and (2) that 'expectation [is] one [our] society is prepared to recognize as reasonable.'" *Id.* (alterations and citation in original). Further, the dissent did not feel that any illegality of the visit should not alter this analysis. *Id.* at 109-10 ("**If the illegality of the activity made constitutional an otherwise unconstitutional search, such Fourth Amendment protection, reserved for the innocent only, would have little force in regulating police behavior toward either the innocent or the guilty.**").

Although the *Carter* dissent could certainly provide the means for Courts to subsequently hold that non-overnight socials guests are entitled to Fourth Amendment protection in their host's home, this Court is presently unwilling to

arrive at such a conclusion. The Court believes the precedent provided by *Olson* and *Carter* is clear, the holdings of which were not otherwise altered by the Seventh Circuit when given the opportunity to do so in *Terry* (albeit a habeas case). Fourth Amendment protection from warrantless searches should not extend to a guest visiting his host's home unless his expectation of privacy in his host's home would be recognized by society as "reasonable." Here, Defendant's 15-minute "drop in" visit would hardly be recognized as a valuable societal institution where one seeks out shelter and privacy away from the public, as would an overnight guest. The Court will not construe and extend *Olson* and *Carter* to warrant Defendant's claim to Fourth Amendment protection in this situation.

## IV. CONCLUSION

In sum, the Court holds that Defendant, as a non-overnight social guest, had no legitimate expectation of privacy in his host's home to warrant Fourth Amendment protection from a warrantless search of the home. As such, Defendant has no standing to challenge the search or to suppress the evidence derived therefrom. Because the Court finds Defendant has no standing, it need not reach the issues of whether there was an applicable exception to justify the warrantless search or other arguments raised in the Motion to Suppress. Accordingly, Defendant's Motion to Suppress (Doc. 11) is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed this 16th day of December, 2008.

/s/ David R Herndon
**Chief Judge**
**United States District Court**